No. 16-35837

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

MATTHEW R. RUTH,

Petitioner-Appellant,

v.

PATRICK R. GLEBE,

Respondent-Appellee.

On Appeal from United States District Court
Western District of Washington at Seattle
District Court Case No. 2:15-cv-00533-TSZ

The Honorable Thomas S. Zilly
United States District Judge

PETITIONER-APPELLANT'S OPENING BRIEF

Ann K. Wagner
*Assistant Federal Public Defender*
Federal Public Defender's Office
1601 5th Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv

I.   STATEMENT OF JURISDICTION ................................................ 1

II.  ISSUES PRESENTED FOR REVIEW ........................................... 1

    A. The Prosecutor Violated Petitioner's Fourteenth Amendment Right to a Fair Trial When He Fashioned Improper Arguments Based on a Faulty Reasonable Doubt Instruction and a Misstatement of the Law of Self Defense. ................................................................................. 1

    B. Petitioner's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When Trial Counsel Failed to Request a Lesser-Included Offense Jury Instruction. .......................................................... 2

    C. Petitioner's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When Trial Counsel Proposed a Faulty Self-Defense Instruction. ........................................................................... 2

    D. The Trial Judge Violated Petitioner's Right to Counsel When He Responded to a Mid-Deliberation Question From the Jury Without Giving the Defense an Opportunity to Participate in Formulating the Response. ... 2

    E. The Cumulative Effect of the Trial Errors Deprived Petitioner of His Right to a Fair Trial Under the Fourteenth Amendment. ......................... 2

III. STATEMENT OF THE CASE ..................................................... 2

    A. Procedural History ............................................................. 2

    B. Summary of Relevant State Trial Evidence ................................ 4

    C. Self-Defense Theory ........................................................... 8

IV.  SUMMARY OF ARGUMENT .................................................... 9

V.   ARGUMENT ...................................................................... 10

    A. The Court of Appeals Violated Clearly Established Law by Concluding, Contrary to *Darden*, that the Prosecutor's Misstatement of Washington Law Did Not Amount to Prosecutorial Misconduct ................................ 10

      1.  Standard of review ........................................................................11

      2.  The court of appeals acted contrary to *Darden* when it analyzed prejudice solely based on the relative quantity of proper to improper argument in the closing statement....................................................11

B.  The Court of Appeals Violated Clearly Established Law by Unreasonably Applying *Strickland v. Washington* to Mr. Ruth's Claim That His Counsel Rendered Ineffective Assistance by Failing to Request a Lesser-Included Instruction. ...............................................................................................15

      1.  Standard of review ........................................................................16

      2.  The court of appeals unreasonably applied clearly established law by baselessly assuming trial strategy foreclosed petitioner's ineffective assistance of counsel claim. .............................................................17

C.  The Court of Appeals Unreasonably Applied *Strickland* by Holding That Mr. Ruth Was Not Prejudiced by His Counsel's Request for a Self-Defense Instruction That Had Been Disapproved by the Washington Supreme Court. ....................................................................................20

      1.  Standard of review ........................................................................20

      2.  The court of appeals failed to consider whether the outcome of the trial would have changed with reference to the subjective standard set forth in the self-defense jury instruction......................................21

D.  The Court of Appeals Acted Contrary to Clearly Established Law by Subjecting Mr. Ruth's Sixth Amendment Claim to Harmless Error Analysis. ...............................................................................................24

      1.  Standard of review ........................................................................24

      2.  The trial court's failure to consult the defense when answering a jury question was presumptively prejudicial.............................................24

E.  The Court of Appeals Acted Contrary to Clearly Established Federal Law When It Concluded Cumulative Error Did Not Deprive Mr. Ruth of His Right to a Fair Trial. ....................................................................................25

      1.  Standard of review ........................................................................25

      2.  The cumulative error claim was exhausted, at least insofar as it was construed in Mr. Ruth's direct appeal.............................................25

VI.  CONCLUSION .....................................................................................27

STATEMENT OF RELATED CASES .................................................................28

CERTIFICATE OF COMPLIANCE.......................................................................29

CERTIFICATE OF SERVICE ................................................................................30

# TABLE OF AUTHORITIES

*Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984) .................................................. 17

*Boyde v. California*, 494 U.S. 370 (1990) .......................................................... 12

*Butcher v. Marquez*, 758 F.2d 373 (9th Cir. 1985) ................................................ 18

*Crace v. Herzog*, 798 F.3d 840 (9th Cir. 2015) ............................................... 17, 19

*Darden v. Wainwright*, 477 U.S. 168 (1986) ...................................... 11, 12, 14, 15

*Deck v. Jenkins*, 814 F.3d 954 (9th Cir. 2016) ................................... 11, 13, 16, 24

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)..........................................11

*Flowers v. Foulk*, 2016 WL 899152 (N.D. Cal. Mar. 9, 2016) ............................ 26

*Hein v. Sullivan*, 601 F.3d 897 (9th Cir. 2010) ..................................................... 12

*Knowles v. Mirzayance*, 556 U.S. 111 (2009) ...................................................... 16

*Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009) ........................................... 24

*Picard v. Connor*, 404 U.S. 270 (1971) ................................................................ 25

*Rompilla v. Beard*, 545 U.S. 374 (2005) .............................................................. 16

*Scott v. Schriro*, 567 F.3d 573 (9th Cir. 2009) ...................................................... 25

*State v. Castle*, 935 P.2d 656 (Wash. App. 1997) .................................................... 1

*State v. Fernandez-Medina*, 141 Wash. 2d 448, 6 P.3d 1150 (2000) ................... 17

*State v. Hughes*, 106 Wash. 2d 176, 721 P.2d 902 (1986) ................................... 18

*State v. Mierz*, 127 Wash. 2d 460, 901 P.2d 286 (1995) ......................................... 8

*State v. Rodriguez*, 121 Wash. App. 180, 87 P.3d 1201 (Wash. App. 2004)....21, 23

*State v. Studd*, 137 Wash. 2d 533 (1999) ................................................... 11, 13, 14

*State v. Walden*, 131 Wash. 2d 469, 932 P.2d 1237 (1997) .................................. 20

*State v. Wilson*, 125 Wash. 2d 212, 883 P.2d 320 (1994) ..................................... 19

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................... 10, 16, 19

*Towery v. Schriro*, 641 F.3d 300 (9th Cir. 2010) .................................................. 12

*United States v. Artero*, 121 F.3d 1256 (9th Cir. 1997) .......................................... 1

*United States v. Cronic*, 466 U.S. 648 (1984) ...................................................... 24

*United States v. Sanchez*, 176 F.3d 1214 (9th Cir. 1999) ...................................... 11

*Victor v. Nebraska*, 511 U.S. 1 (1994) ................................................................... 1

*Whelchel v. Washington*, 232 F.3d 1197 (9th Cir. 2000) ...................................... 26

*Wooten v. Kirkland*, 540 F.3d 1019 (9th Cir. 2008) ............................................. 25

## Statutes and Other Authorities

28 U.S.C. § 1291 ....................................................................................................... 1

28 U.S.C. § 2241 ....................................................................................................... 1

28 U.S.C. § 2253 ....................................................................................................... 1

28 U.S.C. § 2254 ....................................................................................................... 1

Fed. R. App. P. 4 ....................................................................................................... 1

Wash. Pattern Jury Inst. 2.04.01. ...................................................................... 22, 23

Wash. Rev. Code § 9.41.010 ..................................................................................... 2

Wash. Rev. Code § 9A.36.011................................................................... 2, 17, 19

Wash. Rev. Code § 9A.36.021 .............................................................................. 19

Wash. Rev. Code § 9A.94A.510................................................................................ 2

## I.   STATEMENT OF JURISDICTION

The District Court had original jurisdiction under 28 U.S.C. §§ 2241 and

2254. The final judgment and order denying relief and dismissing the petition was

entered on September 28, 2016. ER 50. A certificate of appealability was granted

on Grounds 3, 4(a), 5(a), and 5(b) of the Report and Recommendation. ER 6.

A timely notice of appeal was filed on October 14, 2016. Fed. R. App.

P. 4(a); ER 1. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

## II.   ISSUES PRESENTED FOR REVIEW

Matthew Ruth argued the following certified issues in his petition for writ of

habeas corpus:

> **A.** **The Prosecutor Violated Petitioner's Fourteenth Amendment Right to a Fair Trial When He Fashioned Improper Arguments Based on a Faulty Reasonable Doubt Instruction[1] and a Misstatement of the Law of Self Defense.[2]**

---

[1] The reasonable doubt instruction in Mr. Ruth's case was based on a pattern jury instruction from the Federal Judicial Center. *See State v. Castle*, 935 P.2d 656, 658 & n.1 (Wash. App. 1997). Because there is no clearly established federal law forbidding use of such an instruction, this sub-issue will not be briefed. *See Victor v. Nebraska*, 511 U.S. 1, 26 (1994) (Ginsburg, J., concurring) (approving of the instruction as "clear, straightforward, and accurate"); *see also United States v. Artero*, 121 F.3d 1256, 1257–58 (9th Cir. 1997) (approving of a nearly identical instruction).

[2] Issue 4(a) in the district court. ER 9.

**B. Petitioner's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When Trial Counsel Failed to Request a Lesser-Included Offense Jury Instruction.[3]**

**C. Petitioner's Sixth Amendment Right to Effective Assistance of Counsel Was Violated When Trial Counsel Proposed a Faulty Self-Defense Instruction.[4]**

**D. The Trial Judge Violated Petitioner's Right to Counsel When He Responded to a Mid-Deliberation Question From the Jury Without Giving the Defense an Opportunity to Participate in Formulating the Response.[5]**

In addition, Mr. Ruth argued the following uncertified issue in his petition:

**E. The Cumulative Effect of the Trial Errors Deprived Petitioner of His Right to a Fair Trial Under the Fourteenth Amendment.[6]**

## III. STATEMENT OF THE CASE

### A. Procedural History

On December 9, 2004, after a jury trial, Petitioner Matthew Ruth was convicted of two counts of Washington first-degree assault, contrary to Wash. Rev. Code 9A.36.011, 9A.94A.510, and 9.41.010, with a special verdict finding that he used a deadly weapon other than a firearm. ER 45. On direct appeal to the Washington court of appeals, Mr. Ruth argued, among other issues, that he "was denied his constitutional right to a fair trial . . . where the prosecutor misstated the

---

[3] Issue 5(a) in the district court. ER 10.
[4] Issue 5(b) in the district court. ER 10.
[5] Issue 3 in the district court. ER 9.
[6] Issue 7 in the district court. ER 10.

2

law as to self-defense," ER 111–115, that he "was denied his constitutional right to effective representation and a fair trial when his trial attorney requested language used in instruction 16, which misstates the law and eased the State's burden to disprove appellant's self-defense claims," ER 123–128, that the trial court improperly imposed a firearm enhancement when the special jury verdict found only use of a deadly weapon, ER 129–131, that he received ineffective assistance of counsel when his trial counsel failed to request a lesser-included offense instruction on second-degree assault, ER 151–157, and that cumulative error deprived him of his right to a fair trial, ER 128. The court of appeals affirmed in a reasoned decision on all of the above issues. ER 56.

Mr. Ruth then raised each of those issues in his petition for discretionary review to the Washington supreme court. ER 181–183 (prosecutor's misstatement of law regarding self-defense), ER 185–186 (instruction 16), ER 186 (firearm enhancement), ER 189–191 (lesser-included), ER 186 (cumulative error). The Washington supreme court granted review as to the firearm enhancement issue, denied Mr. Ruth the opportunity to brief other issues, reversed the holding of the court of appeals on the firearm enhancement issue, and remanded for resentencing. ER 196; ER 198. Mr. Ruth did not file a direct appeal after resentencing.

Through counsel, Mr. Ruth filed a timely personal restraint petition ("PRP") arguing, among other issues, that the failure of the judge to allow his defense

counsel an opportunity to participate in the formulation of a response to a jury question violated his Sixth Amendment right to counsel. ER 260–263. The court of appeals dismissed the PRP without an evidentiary hearing. ER 309. The Deputy Commissioner of the Washington supreme court ("Commissioner") denied Petitioner's motion for discretionary review. ER 314. Petitioner then filed a motion to modify the Commissioner's ruling, discussing the jury question issue at length; the motion was summarily denied on April 2, 2015. ER 329–332; ER 340.

Petitioner-Appellant timely filed a § 2254 habeas petition briefing each of the above issues; the District Court received the petition through the mail on April 3, 2015. ER 679. The magistrate judge issued a Report and Recommendation, recommending denying the petition but granting a certificate of appealability on three certified issues: 3 (jury question), 4(a) (prosecutor's misstatement of law regarding self-defense), and 5(a) (lesser included). ER 9–10; ER 38. The district court judge granted a certificate of appealability on the three issues recommended by the magistrate judge, and also granted a certificate of appealability with respect to 5(b) (instruction 16). ER 6.

## B. Summary of Relevant State Trial Evidence

When the shootings for which Mr. Ruth was convicted of first-degree assault occurred, Mr. Ruth was living in a trailer on a larger horse ranch that also contained a one-bedroom house rented by one of the victims, Jeremy Custer.

ER 58; ER 556–557. Mr. Ruth worked for his landlord Candy Corder, cleaning horse stalls and repairing equipment, in exchange for living there. ER 558.

Mr. Ruth testified that he had met Mr. Custer through the music business; Mr. Ruth was a DJ and made music of his own. ER 577–578. In September of 2003, Mr. Custer approached Mr. Ruth about becoming part of Mr. Custer's record label and invited him to his home studio; there, Mr. Ruth observed people smoking methamphetamine. ER 579–584. Soon afterward, Mr. Ruth moved into the trailer on the property in order to work more closely with Mr. Custer on his record label. ER 587–588. When he moved in, Mr. Ruth found drug paraphernalia and trash left over from when Mr. Custer had lived in the trailer. ER 588.

As time went on, Mr. Ruth became increasingly alarmed at the large quantities of different drugs he witnessed when he went to Mr. Custer's studio to work on the purported music business. ER 590–591. He also overheard Mr. Custer discussing with his associates robberies of drug dealers and a drug deal gone wrong in which a friend of theirs had been killed. ER 591–592. Mr. Ruth observed them carrying firearms and threatening to kill those responsible for the friend's death. ER 592. Mr. Custer and his friends began attempting to control Mr. Ruth's activities outside the studio, and he became more and more afraid of them. ER 592. Before the beginning of November, Mr. Ruth or his girlfriend approached

Ms. Corder and expressed concern about the drug use going on at Mr. Custer's house. ER 597; ER 564.

In the early morning of November 1, 2003, Mr. Ruth witnessed four or five cars pull up fast to Mr. Custer's house as people including Mr. Custer and Mr. Eden (the other shooting victim) streamed out of Mr. Custer's house to confront them. ER 594–595. The two groups screamed at one another and one person stated that Mr. Custer owed $10,000 to someone for drugs and threatened consequences if he failed to pay. ER 595. The confrontation ended with both sides pulling out guns, but no guns were fired. ER 595.

On the morning of November 5, 2003, Mr. Ruth left his trailer, where his girlfriend was sleeping. He hopped the fence between the trailer and Mr. Custer's house, and approached Mr. Custer and Mr. Eden about cleaning up Mr. Custer's yard, as Ms. Corder had asked him to do. ER 596–597; ER 597–598. Mr. Custer responded by screaming at him about Mr. Ruth and his girlfriend "snitching on him" and accusing Mr. Ruth of stealing drugs. ER 599. Mr. Custer said he knew the drugs were in Mr. Ruth's trailer and threatened to go inside Mr. Ruth's trailer and rape his girlfriend. ER 599. He threatened to make Mr. Ruth watch the rape and further threatened to kill both Mr. Ruth and his girlfriend. ER 599. Mr. Ruth feared for his life and tried to get Mr. Custer to calm down. ER 599. Mr. Eden echoed Mr. Custer's threats. ER 600.

Mr. Ruth told Mr. Custer that if he came inside his house he would call the police, and Mr. Custer responded by threatening to kill Mr. Ruth's father and his girlfriend's children. ER 600. Mr. Ruth told him no and jumped back over the fence toward his trailer. ER 600. Mr. Custer and Mr. Eden followed him and prevented him from closing the door to the trailer. ER 601–602. They ripped the door out of his hand and entered the trailer, drawing guns from their waistbands. ER 602. Mr. Ruth feared for his life. ER 602. Mr. Ruth grabbed a .22 from a cabinet, and when Mr. Custer began to advance toward him, he started shooting. ER 602–603.

Mr. Ruth testified, "I didn't want to hurt them. I didn't want anyone to get killed. I just wanted them to go away. I didn't want this to happen. I just wanted them to leave. I wanted to be safe. I wanted me and my girlfriend to be safe in my own home." ER 603. He tried to aim low so neither man would be hurt. ER 603. Mr. Ruth didn't know he had shot either Mr. Custer or Mr. Eden, and they fled the trailer. ER 603-604. They screamed at Mr. Ruth and told him not to call the cops. ER 607.

In their testimony, Mr. Eden and Mr. Custer contended they had been looking for a pair of headphones in Mr. Ruth's trailer rather than drugs. ER 505; ER 473. Mr. Eden admitted that soon after the shooting he had told a woman that Mr. Custer had been looking for a pound of marijuana rather than headphones, but

7

claimed at trial that it had been an incorrect assumption on his part. ER 516. That woman testified that she had given a ride on November 5, 2003, to a man who had been shot and that he said he had been shot "[o]ver weed, or weed or drugs or something." ER 461. Mr. Custer testified that Mr. Ruth had "borrowed" marijuana from his house in the past. ER 461–462.

Mr. Custer and Mr. Eden denied they had weapons or made threats when they entered Mr. Ruth's trailer. ER 510; ER 477. After he was shot twice, in the arm and in the leg, Mr. Custer admitted that he said, "No cops," and did not call the police. ER 486; ER 487. Mr. Custer did not go directly to the hospital because he "wasn't bleeding really bad" and didn't have insurance. ER 485. Instead, he put some items in a bag and drove to a friend's house. ER 485. Mr. Eden, who was shot in the back, hitchhiked a ride and did go to the hospital. ER 514. Mr. Ruth, meanwhile, went to his mother's house in California with his girlfriend before turning himself in. ER 608.

### C. Self-Defense Theory

In closing arguments, Mr. Ruth's trial counsel presented a self-defense theory, arguing that Mr. Custer stormed into Mr. Ruth's home, upset about a pound of marijuana that was missing from his house, and Mr. Ruth shot Mr. Custer and Mr. Eden "out of panic, out of fear, and out of self-defense." ER 660; ER 665. He pointed to Mr. Custer's odd behavior after being shot, including disappearing with

8

a bag of items immediately after the shooting and failing to call the police or go to the hospital. ER 663–664. On rebuttal, the prosecutor countered that Mr. Ruth "shot two unarmed young men for no reason other than his anger and his paranoia." ER 672. Contrary to Washington self-defense law, the prosecutor faulted Mr. Ruth for failing to leave his trailer and call the police when he was threatened: "If you recall, the defendant was standing right next to the door, looking into the bedroom, when he pulls out the pistol and starts to blast. The door is right there. If he is so threatened, all he has to do is leave. Call the cops." ER 668. Mr. Ruth's counsel objected to this statement but was overruled. ER 668. He also moved for a mistrial on the basis that the argument was directly in contradiction to instruction 15 ("It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat."). ER 674; ER 288. The motion was denied. ER 674.

## IV.    SUMMARY OF ARGUMENT

On direct appeal, the Washington court of appeals violated clearly established federal law when it held the prosecutor's misstatement of Washington law regarding an alleged duty to retreat from one's home in order to claim self-defense did not amount to prosecutorial misconduct under the due process clause

of the Fourteenth Amendment. The court of appeals further violated clearly established federal law by failing to reasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), to Mr. Ruth's claims that his trial counsel rendered ineffective assistance under the Sixth Amendment by failing to request a lesser-included second-degree assault instruction and by submitting an erroneous self-defense instruction that had been disapproved by the Washington supreme court in first-degree assault trials like Mr. Ruth's. In addition, it acted contrary to clearly established federal law when it held cumulative error had not deprived Mr. Ruth of his right to a fair trial (an uncertified issue). In dismissing his personal restraint petition, the Washington court of appeals violated clearly established law by holding that the trial court's response to a jury question without consulting Mr. Ruth's counsel did not violate the Sixth Amendment right to counsel.

## V.  ARGUMENT

### Certified Issues

#### A.  The Court of Appeals Violated Clearly Established Law by Concluding, Contrary to *Darden*, that the Prosecutor's Misstatement of Washington Law Did Not Amount to Prosecutorial Misconduct.

When, in his rebuttal closing argument, the prosecutor responded to Mr. Ruth's claim of self-defense by claiming Mr. Ruth was not entitled to the defense because "[t]he door is right there. If he is so threatened, all he has to do is leave. Call the cops," ER 668, he directly contradicted the law of self-defense in

10

Washington, which imposes no duty to retreat to a person in his own home. *See State v. Studd*, 137 Wash. 2d 533, 549–50 (1999). This misstatement, which went to the heart of Mr. Ruth's defense, went uncorrected by the court, fatally undermining Mr. Ruth's defense and rendering his trial fundamentally unfair in violation of the Fourteenth Amendment.

### 1. *Standard of review*

The denial of a petition for the writ of habeas corpus is reviewed *de novo*. *Deck v. Jenkins*, 814 F.3d 954, 977 (9th Cir. 2016). This Court reviews for harmless error acts of prosecutorial misconduct to which the defendant has objected. *United States v. Sanchez*, 176 F.3d 1214, 1218 (9th Cir. 1999).

### 2. *The court of appeals acted contrary to* Darden *when it analyzed prejudice solely based on the relative quantity of proper to improper argument in the closing statement.*

For claims of prosecutorial misconduct based on improper argument, clearly established federal law is found in the Supreme Court's decision in *Darden v. Wainwright*, 477 U.S. 168 (1986). *See Deck v. Jenkins*, 814 F.3d 954, 977–78 (9th Cir. 2016). *Darden* requires the reviewing court to assess whether the prosecutor's improper comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In determining whether a comment rendered a trial constitutionally unfair under *Darden*, courts consider

factors including "whether the comment misstated the [law], whether the judge admonished the jury to disregard the comment, whether the comment was invited by defense counsel in its summation, whether defense counsel had an adequate opportunity to rebut the comment, the prominence of the comment in the context of the entire trial and the weight of the evidence." *Hein v. Sullivan*, 601 F.3d 897, 912–13 (9th Cir. 2010). A constitutional violation arising from prosecutorial misconduct does not warrant habeas relief if the error is harmless. *Towery v. Schriro*, 641 F.3d 300, 307 (9th Cir. 2010).

The Supreme Court has observed that "arguments of counsel generally carry less weight with a jury than do instructions from the court." *Boyde v. California*, 494 U.S. 370, 384 (1990). The impact of "arguments that misstate the law" is mitigated when those arguments are "subject[ed] to objection and to correction by the court." *Id.* at 385. The Supreme Court has further cautioned that "arguments of counsel . . . must be judged in the context in which they are made." *Id.*

The district court held that the state court of appeals applied a test "essentially the same" as *Darden*'s when it concluded that the improper statement of Washington law on the duty to retreat was not "the main focus of the prosecutor's argument" and thus Mr. Ruth was not prejudiced. ER 29–30. This was error: While a state court applying *Darden* looks at the improper comments in context, *see Darden*, 477 U.S. at 179, *Darden* does not permit a court to measure

12

due process by comparing the quantity of proper argument to the quantity of improper argument in the prosecutor's summation alone. In *Deck v. Jenkins*, this Court held that the California court of appeals unreasonably applied *Darden* where it held that "[t]he prosecutor's errant gloss on the law of attempt . . . . was an isolated departure in a few stray words and not the focus of the prosecutor's argument." *Deck*, 814 F.3d 954, 975, 980 (quoting court of appeals opinion). In fact, this Court held, "the erroneous assertions of law in the prosecutor's closing rebuttal argument were not mere 'stray words,' they were a direct response to the central theory of Deck's case." *Id.* at 980.

Here, too, the prosecutor's erroneous statement of Washington's law on self-defense went to the heart of Mr. Ruth's theory of the case. Washington law holds there is no duty to retreat from one's own home. *See State v. Studd*, 137 Wash. 2d 533, 549–50 (1999). In accordance with this law, Mr. Ruth's attorney began his summation with the statement that "Matthew Ruth was in his home the afternoon that he shot the two young men in question," ER 659, and he concluded with another appeal to the jury's understanding for the actions of a person attacked within his home: "That led him and his friend to confront Matt Ruth in his home, the only place he had as a home." ER 665. The fact that the shooting took place in Mr. Ruth's home, where he had no duty to retreat, was thus a crucial premise of the central defense theory.

In an attempt to refute this theory, the prosecutor then told the jury on rebuttal, "If you recall, the defendant was standing right next to the door, looking into the bedroom, when he pulls out the pistol and starts to blast. The door is right there. *If he is so threatened, all he has to do is leave*. Call the cops." ER 668 (emphasis added). Because Mr. Ruth did not "ha[ve] to leave" his home when he reasonably feared his visitors' threats, the prosecutor misstated Washington law. *Cf. State v. Sudd*, 137 Wash. 2d at 550 ("We do not believe the prosecutor was suggesting that [the defendant] could have run away during the ensuing altercation with the victim."). Furthermore, because the prosecutor's comment contradicted Mr. Ruth's central defense theory, it was highly "prominen[t] . . . in the context of the entire trial," one of the *Darden* factors. And the defense lacked "adequate opportunity to rebut the comment" because it was delivered on rebuttal—another *Darden* factor.

Other factors to be considered under *Darden* similarly weigh in favor of Mr. Ruth's constitutional claim. The judge did not admonish the jury to disregard the comment; rather, after Mr. Ruth's counsel objected that "there is an instruction on that" and moved to strike the comment, the court accepted the prosecutor's characterization of his comment as "argument" and permitted the jurors to "make their own determination" on a settled matter of law. ER 668. The Court also denied Mr. Ruth's request for a limiting instruction. ER 668–669. And although the

comment was responding to a defense theory, the comment was not "invited by defense counsel in its summation" in the sense suggested by *Darden*. *Cf. Darden*, 477 U.S. at 179 (defense summation had characterized perpetrator of the crimes as an "animal" before the prosecutor used that word to refer to the defendant).

Comments by the prosecutor, the government's voice on Washington law, which imposed a legal duty on Mr. Ruth to retreat from his home, necessarily carried a weight that the preceding attacks on Mr. Ruth's credibility—a judgment specially reserved to the jury—did not. The prosecutor's misstatement of law went uncorrected by the Court despite a timely objection from the defense, increasing the likelihood that the jury would credit the prosecution's misstatement. The prejudice Mr. Ruth suffered from this uncorrected error cannot be overstated. Given the circumstances under which the shooting took place, being deprived of the right to stand his ground rendered Mr. Ruth's self-defense theory untenable. This misstatement amounted to a denial of due process and requires the vacation of Mr. Ruth's conviction.

### B. The Court of Appeals Violated Clearly Established Law by Unreasonably Applying *Strickland v. Washington* to Mr. Ruth's Claim That His Counsel Rendered Ineffective Assistance by Failing to Request a Lesser-Included Instruction.

The court of appeals concluded without analysis or citation to the record that petitioner's counsel's performance was not deficient because failing to ask for a lesser-included instruction was a "matter of trial strategy" following from his self-

defense argument. ER 70. But self-defense in no way contradicted and was even complementary to a second-degree assault instruction. *Strickland* does not permit a court to conclude without evidence that trial strategy motivated a blatantly unreasonable failure to ask for a lesser-included instruction.

      1. *Standard of review*

      The denial of a petition for the writ of habeas corpus is reviewed *de novo*. *Deck v. Jenkins*, 814 F.3d 954, 977 (9th Cir. 2016). Ineffective assistance of counsel claims contravene clearly established law when they fail to follow the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must prove (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. *Id.* at 687. This Court's review of an ineffective assistance claim under AEDPA is "doubly deferential"—not only to the decisions of counsel, but also to the conclusions of the state court. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). However, where the state court reaches one *Strickland* prong and does not address the other, the unaddressed prong is analyzed *de novo*. *Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (reviewing *Strickland* prejudice *de novo* because the state court decision did not reach that prong).

2. *The court of appeals unreasonably applied clearly established law by baselessly assuming trial strategy foreclosed petitioner's ineffective assistance of counsel claim.*

Under the Washington supreme court's decision in *State v. Fernandez-Medina*, Mr. Ruth would have been entitled to have the jury instructed as to second-degree assault had his counsel requested it. 141 Wash. 2d 448, 6 P.3d 1150 (2000) (holding that a defendant is entitled to a second-degree assault instruction if the evidence supports a theory that he may have lacked the "inten[t] to do great bodily injury" to the victim, *see* RCW 9A.36.011, but still intentionally assaulted the victim, even when the defendant simultaneously asserts an inconsistent theory such as an alibi defense).

Failing to ask for a lesser-included or inferior-degree instruction can be a reasonable trial strategy when defense counsel primarily challenges the sufficiency of the evidence on the greater offense, hoping for an acquittal on the greater despite the likelihood that the lesser included offense has been proven. *See Crace v. Herzog*, 798 F.3d 840, 852 (9th Cir. 2015) ("In certain circumstances, it may be reasonable for a defense attorney to opt for an 'all-or-nothing' strategy, forcing the jury to choose between convicting on a severe offense and acquitting the defendant altogether."); *see, e.g., Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

Here, however, Mr. Ruth's counsel placed primary emphasis on the affirmative defense of self-defense, where self-defense would have been an equally

17

viable defense to second-degree assault as it was to first-degree assault. "Traditionally," in Washington, "self-defense is available in an assault situation." *State v. Mierz*, 127 Wash. 2d 460, 478 n.12, 901 P.2d 286, 295 n.12 (1995). In contrast to, for example, an alibi defense, a self-defense theory does not deny the conduct that forms the basis of the lesser-included or inferior-degree offense. *Cf. Butcher v. Marquez*, 758 F.2d 373, 377 (9th Cir. 1985). Rather, a self-defense theory asserts that whatever conduct has been proven by the evidence was justified. *See State v. Hughes*, 106 Wash. 2d 176, 190, 721 P.2d 902, 910 (1986) ("If a defendant subjectively thinks that self-defense is necessary and if that belief is reasonable, his or her use of force may be justified.").

Because a self-defense strategy does not deny the alleged conduct, there is no tension between a self-defense theory and an inferior-degree assault instruction. Indeed, any assertion of self-defense adequate to negate the first-degree assault would also negate second-degree assault. Meanwhile, if the jury disbelieved Mr. Ruth's primary defense, they could still harbor some doubt that Mr. Ruth "inten[ded] to inflict great bodily harm," leading to a second-degree assault conviction instead. The Court of Appeal's baseless attribution of strategic thinking to Mr. Ruth's counsel on this point is an unreasonable application of *Strickland*'s performance prong.

Although the court of appeals did not reach *Strickland*'s prejudice prong, Mr. Ruth easily meets this standard. A defendant demonstrates prejudice under *Strickland* by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A conviction on an inferior-degree offense is a different result for the purpose of *Strickland*. *Crace*, 798 F.3d at 851.

The only substantive difference between Mr. Ruth's first-degree assault instruction, ER 280; *see* RCW 9A.36.011(a), and second-degree assault, RCW 9A.36.021(1)(c), is that the specific intent required for the former, "with intent to inflict great bodily harm," is absent in the latter. *See State v. Wilson*, 125 Wash. 2d 212, 217, 883 P.2d 320, 323 (1994). "[G]reat bodily harm" is an exacting standard, defined as "bodily injury that creates a probability of death, or which causes significant permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." ER 282. The injuries sustained by Mr. Custer and Mr. Eden, in contrast, did not cause much bleeding, ER 485; ER 464; ER 669, and Mr. Custer did not go to the hospital, even after being examined by emergency medical personnel, because his injuries were not deemed life-threatening. ER 439–440. Because specific intent was only fleetingly addressed by either the prosecutor or defense counsel, *see* ER 646; ER 647; ER 660–661, and the strict "great bodily harm" definition not at all, there is a

19

reasonable probability that one or more jurors would conclude that the government had not proven the specific intent to inflict "great bodily harm" beyond a reasonable doubt, but would nonetheless agree to convict Mr. Ruth on the inferior-degree offense. Mr. Ruth has demonstrated prejudice.

### C. The Court of Appeals Unreasonably Applied *Strickland* by Holding That Mr. Ruth Was Not Prejudiced by His Counsel's Request for a Self-Defense Instruction That Had Been Disapproved by the Washington Supreme Court.

The self-defense instruction requested by Mr. Ruth's counsel had been disapproved by the Washington supreme court in the context of first-degree assault trials like Mr. Ruth's because it subjected defendants to a mistakenly heightened standard to qualify for self-defense. *See State v. Walden*, 131 Wash. 2d 469, 475 n.3, 932 P.2d 1237, 1240 n.3 (1997). The court of appeals nonetheless held Mr. Ruth was not prejudiced because he testified that Mr. Custer and Mr. Eden delivered the kind of threats that would have met the heightened standard. ER 68 (emphasis added). But the jury was not asked whether the threats were sufficiently violent; they were asked whether Mr. Ruth could have reasonably credited threats that met the standard. This critical difference changes the prejudice analysis entirely.

#### 1. *Standard of review*

The standard of review for ineffective assistance claims is set forth supra, p. 16.

2. *The court of appeals failed to consider whether the outcome of the trial would have changed with reference to the subjective standard set forth in the self-defense jury instruction.*

The faulty instruction read: "A person is entitled to act on appearances in defending himself or another, if that person believes in good faith and on reasonable grounds that he or another is in actual danger of *great bodily harm*, although it afterwards might develop that the person was mistaken as to the extent of the danger. Actual danger is not necessary for the use of force to be lawful." ER 289 (emphasis added). As another Washington court of appeals observed, "[S]tanding alone or with other instructions to this jury on the question of self-defense, this statement would at least be innocuous and perhaps even an accurate statement of the law. The problem here is that the court also instructed the jury on the requirements of assault in the first degree." *State v. Rodriguez*, 121 Wash. App. 180, 185–86, 87 P.3d 1201, 1204 (Wash. App. 2004).

In Mr. Ruth's trial, as in *Rodriguez,* "great bodily harm" was a separately defined element of first-degree assault: "Great bodily harm means bodily injury that creates a probability of death, or which causes significant serious permanent disfigurement, or that causes a significant permanent loss or impairment of the function of any bodily part or organ." ER 282. The trial court thus erroneously instructed the jury that Mr. Ruth was only entitled to defend himself if he reasonably believed he or his girlfriend were in actual danger of bodily injury

risking death or causing permanent disfigurement, or loss or impairment of a body part. The correct standard was reasonable belief of endangerment from "an injury that the [defendant] reasonably believed, in light of all the facts and circumstances known at the time, would produce severe pain and suffering if it were inflicted upon either the [defendant] or another person." WPIC 2.04.01. Mr. Ruth's counsel's decision to affirmatively request an instruction that imposed a more onerous standard for reasonable use of force in self-defense was decidedly deficient, and the court of appeals decided against Mr. Ruth's claim on the prejudice prong rather than performance. ER 68.

The court of appeals failed to reasonably apply *Strickland*'s prejudice prong when it held that there was no prejudice because if the jury believed that "he was faced with two armed men threatening to rape his girlfriend and then kill them both," "it would have believed that he *faced a threat* of great bodily harm." ER 68 (emphasis added). But *Strickland*'s prejudice prong asks whether there is a reasonable probability that the outcome of the trial would have been different, and the court of appeals misunderstood the question jurors were being asked to answer in deciding whether self-defense justified Mr. Ruth's conduct. They were not asked to decide whether Mr. Ruth was in fact threatened with great bodily harm, but whether Mr. Ruth "believe[d] in good faith *and on reasonable grounds* that he or

another [was] in actual danger of great bodily harm." ER 288 (emphasis added).

The distinction is critical.

Mr. Ruth testified that Mr. Custer and Mr. Eden threatened to rape

Mr. Ruth's girlfriend, forcing Mr. Ruth to watch, in addition to threatening to kill

them. If the jury believed that the threat to kill could not have been reasonably

credited, but that Mr. Ruth could have reasonably feared the threat to rape his

girlfriend, the "great bodily harm" definition would not have been met. *See* ER 282

(requiring reasonable belief in danger of bodily injury risking death or permanent

disfigurement, or loss or impairment of a body part). According to the proper

"great personal injury" definition, in contrast, a credible threat to rape another

could easily constitute grounds for Mr. Ruth's use of force in self-defense. *See*

WPIC 2.04.01 ("Great personal injury means an injury that the [defendant]

reasonably believed, in light of all the facts and circumstances known at the time,

would produce severe pain and suffering if it were inflicted upon either the

[defendant] or another person."); *Rodriguez*, 120 Wash. App. at 186 & n.2, 87 P.3d

at 1204 & n.2. The jury could have discounted threats to kill as relatively

commonplace, regarding the additional specificity of the rape threat as more

legitimately frightening. Or the jury could have believed Mr. Custer and Mr. Eden

were blustering with respect to the threat to murder because they would almost

certainly face serious consequences for that crime, but that they might well carry

23

through with a threat to rape because of the relative likelihood of escaping

prosecution for such an act. Because if correctly instructed, the jury could have

drawn reasonable distinctions between the threats to rape and to murder, Mr. Ruth

was prejudiced by a self-defense instruction that mistakenly imported a heightened

standard for self-defense from the specific intent for first-degree assault.

### D. The Court of Appeals Acted Contrary to Clearly Established Law by Subjecting Mr. Ruth's Sixth Amendment Claim to Harmless Error Analysis.

#### 1. *Standard of review*

The denial of a petition for the writ of habeas corpus is reviewed *de novo*.

*Deck v. Jenkins*, 814 F.3d 954, 977 (9th Cir. 2016).

#### 2. *The trial court's failure to consult the defense when answering a jury question was presumptively prejudicial.*

At Mr. Ruth's trial, the judge responded to the jury's request for transcripts

of Ms. Woerner's pretrial police statement, Mr. Custer's pretrial police statement,

and Mr. Eden's pretrial police statement, without consulting Mr. Ruth or his

counsel. ER 307. "[A] trial is unfair if the accused is denied counsel at a critical

stage of his trial." *United States v. Cronic*, 466 U.S. 648, 659 (1984). A "'stage' at

which the deprivation of counsel may be critical [is] the formulation of the

response to a jury's request for additional instructions." *Musladin v. Lamarque*,

555 F.3d 830, 842 (9th Cir. 2009) (emphasis in original). Because Mr. Ruth's

counsel was not permitted to participate in the formulation of a response to the

jury's request, Mr. Ruth suffered a Sixth Amendment violation which is presumptively prejudicial, and the court of appeals acted contrary to *Cronic* when it held Mr. Ruth could not show prejudice from this deprivation. ER 311.

**Uncertified Issue**

> **E. The Court of Appeals Acted Contrary to Clearly Established Federal Law When It Concluded Cumulative Error Did Not Deprive Mr. Ruth of His Right to a Fair Trial.**

The district court held that Mr. Ruth's cumulative error claim was not exhausted because the cumulative error claim briefed by Mr. Ruth was not identical to the cumulative error claim raised in his direct appeal and ruled on by the state court of appeals. Report and Recommendation, ER 16–17 (citing *Picard v. Connor*, 404 U.S. 270, 278 (1971)); ER 5. This was error.

> **1.  *Standard of review***

This Court reviews *de novo* a district court's dismissal of a habeas petition for procedural default based on a finding that the petitioner failed to exhaust the claims in state court. *Scott v. Schriro*, 567 F.3d 573, 580 (9th Cir. 2009).

> **2.  *The cumulative error claim was exhausted, at least insofar as it was construed in Mr. Ruth's direct appeal.***

Mr. Ruth's cumulative error claim was exhausted, at minimum with respect to the cumulative error of the issues raised in his direct appeal. *See* ER 68; *see Wooten v. Kirkland*, 540 F.3d 1019, 1026 (9th Cir. 2008) (suggesting that "a cumulative error claim must be clearly identified in a petitioner's brief before a

state court to be exhausted"); *see also Flowers v. Foulk*, No. C14-0589 CW, 2016 WL 899152, at *10 (N.D. Cal. Mar. 9, 2016) ("Respondent's main argument as to why claim 6 is unexhausted is that Petitioner did not raise 'this particular claim of cumulative error' because, before the California Supreme Court, Petitioner raised 'the cumulative effect of a different set of claimed errors.' Respondent cites no legal basis for this argument, and this Court could find nothing to support it."). A federal court can easily assess the cumulative error of the set of issues for which a cumulative error claim was presented to the state courts, and should construe a petitioner's cumulative error claim in that fashion even when a larger number of issues is briefed in the habeas petition.

Even if the individual errors briefed in Mr. Ruth's direct appeal—the prosecutor's misstatement of Washington law at closing argument and the ineffective assistance of his trial counsel in failing to request a lesser-included instruction and in requesting a self-defense instruction that had been disapproved by the Washington supreme court—do not amount to a deprivation of the right to a fair trial, the errors together effectively undermined Mr. Ruth's self-defense theory while omitting the second-degree assault instruction to which he was legally entitled. *See Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000) ("Cumulative error applies where, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of

multiple errors has still prejudiced a defendant.") (citations and alterations omitted). Because these interlocking obstacles blocked the fair presentation of Mr. Ruth's defenses to the jury, the jury could not reach a reliable result in accordance with the due process clause of the Fourteenth Amendment.

## VI.   CONCLUSION

Because the district court erred in holding that the state court of appeals did not act contrary to or unreasonably apply clearly established federal law, the judgment below should be reversed and Mr. Ruth's petition should be granted.

DATED this 17th day of March, 2017.

s/ *Ann Wagner*
Assistant Federal Public Defender
Attorney for Matthew R. Ruth

27

## STATEMENT OF RELATED CASES

Counsel is not aware of any related cases now pending before this Court.

DATED this 17th day of March, 2017.

s/ *Ann Wagner*
Assistant Federal Public Defender
Attorney for Matthew R. Ruth

28

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(B)(i), the attached Opening Brief is proportionately spaced, has a typeface of 14 points, and contains 6,374 words.

DATED this 17th day of March, 2017.

s/ *Ann Wagner*
Assistant Federal Public Defender
Attorney for Matthew R. Ruth

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Opening Brief with the Clerk of the Court for the Ninth Circuit Court of Appeals by using the appellate CM/ECF system. I further certify that all Excerpts of Record were electronically filed on this date. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I mailed one copy of this Opening Brief, first-class postage prepaid, to Matthew Ruth, DOC # 879492, at the Washington State Penitentiary.

DATED this 17th day of March, 2017.

s/ *Suzie Strait*
Paralegal